**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LADONNA REED-MORTON,<br>*Plaintiff*,<br>v.<br>SCOTT TURNER,<br>*Defendant*. | No. 25-cv-2287 (DLF) |

**MEMORANDUM OPINION**

Plaintiff Ladonna Reed-Morton, proceeding *pro se*, brings this Title VII action against Scott Turner, in his official capacity as the Secretary of the United States Department of Housing and Urban Development (HUD), her employer. *See generally* Compl., Dkt. 1. Before the Court is the defendant's Motion to Dismiss, Dkt. 14. For the following reasons, the Court will grant the motion and dismiss Reed-Morton's claims without prejudice.

## I. BACKGROUND

Ladonna Reed-Morton, a Black woman, is employed as the Budget Division Director for a subdivision of HUD. *See* Compl. ¶¶ 1, 6. During the relevant period, Charles Montgomery, a Black man, served as Reed-Morton's first-line supervisor; Lisa Abell, a white woman, was her second-line supervisor; and Jaime Forero, a Latino man, her third-line supervisor. *Id.* ¶ 8-10. As part of her role, Reed-Morton was the primary funds control officer. *Id.* ¶ 11. Montgomery was the alternate. *Id.* ¶ 12.

Reed-Morton alleges a lengthy history of protected activity involving her employer. Beginning in 2015, she filed several Equal Employment Opportunity (EEO) complaints, pursued grievances and administrative proceedings, brought two federal civil actions, and pursued an

appeal before the Merit Systems Protection Board. *See id.* ¶ 1. Some of those proceedings resulted in findings favorable to Reed-Morton, including arbitration victories and settlement. *Id.* She further alleges that relevant management officials knew of her protected EEO activity. *See* Compl. Ex. 1, at 4, Dkt. 1-1.

The claims at issue here principally arise from events beginning in 2022. Reed-Morton alleges that Montgomery treated her condescendingly, closely scrutinized her work, assigned work within her budget areas to others, and otherwise changed the terms and conditions of her employment. Compl., Claims ¶ 1. She further alleges that Abell failed to take remedial action when Reed-Morton complained about Montgomery's conduct. *Id.* ¶ 2. Reed-Morton was also denied a promotion and, according to the Complaint, denied a full staff when she requested more employees. *Id.* ¶¶ 3–4. She attributes various aspects of this treatment to her race, sex, and prior protected activity. *See generally* Compl.

In August 2022, Reed-Morton initiated EEO counseling concerning the denial of her staff request and the mistreatment by Montgomery. *See* Compl., Ex. 1, at 2. Counseling did not resolve that dispute, so she received authorization to file a formal complaint and did so on September 9, 2022. *Id.* Reed-Morton later amended that EEO complaint to challenge additional conduct that occurred after she filed. *Id.*

Those later allegations include the denial of a requested detail, a negative performance evaluation, a three-month restriction on her use of leave, a letter of reprimand, a fourteen-day suspension, and unusual and overly restrictive conditions on her leave. Compl., Claims ¶¶ 6–11. She attributes each of these actions to retaliation for her protected EEO activity, including the August 2022 EEO complaint. *Id.*

The dispute eventually extended to Reed-Morton's responsibilities for a particular financial transaction. *See* Compl. ¶ 3. Reed-Morton alleges that she was directed to serve as both the funds-control officer and approving officer for a transaction, which she believed would violate financial-control requirements. *Id.* She refused to do so. *Id.* Montgomery and Abell thereafter issued Reed-Morton a letter of reprimand. Compl., Claims ¶ 9. Montgomery proposed that Reed-Morton be suspended for fourteen days; Abell sustained that suspension. *Id.* ¶ 10. Those actions form the basis of counts nine through eleven, which plaintiff attributes to retaliation and, as to the sustained suspension, race and sex discrimination.

Reed-Morton also explains that she reported suspected improper agency expenditures to the U.S. Office of Special Counsel (OSC). *See* Compl. ¶ 2. OSC contacted her concerning that report in April 2024. Compl., Ex. 7. Approximately one year later, on April 23, 2025, OSC notified the President that one of Reed-Morton's allegations had been substantiated and that the Department was seeking to recover approximately $45,000 that had been improperly disbursed as a separation-relocation allowance. *Id.* ¶ 2. Those allegations, however, postdate the conduct underlying the claims pleaded in the Complaint, which extend only through February 2024. *See* Compl. at 4–6.

Reed-Morton ultimately brings twelve counts alleging various combinations of race discrimination, sex discrimination, and retaliation under Title VII. *Id.*; *see also* Def.'s Mot. to Dismiss 3–4. She also alleges that the course of conduct described above created a hostile work environment. Defendant now moves to dismiss the complaint for failure to state a claim, Dkt. 14.

## II. LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although that standard does not impose a probability requirement, it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In applying that standard, the Court accepts well-pleaded factual allegations as true and construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The Court need not, however, accept "a legal conclusion couched as a factual allegation" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

Defendant moves to dismiss Reed-Morton's discrimination, retaliation, and hostile-work-environment claims. The Court addresses each in turn.

### A. Discrimination.

To survive a motion to dismiss a Title VII discrimination claim, a plaintiff must allege facts permitting a plausible inference that she suffered an employment-related harm because of her race or sex. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). In the absence of "direct evidence of discrimination"—for example, a statement that itself shows impermissible bias, *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)—a discrimination claim is analyzed under the *McDonnell Douglas* framework, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff has the burden of first establishing a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she suffered an

adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citation modified). If "the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action in question." *Id.* (citation modified). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citation modified); *see McDonnell Douglas Corp.*, 411 U.S. at 804–05.

At the motion to dismiss stage, a plaintiff need not plead facts supporting every element of a prima facie case or anticipate the nondiscriminatory reasons that her employer may proffer. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–14 (2002). But, taken collectively, "the inferences of discrimination drawn by the plaintiff" must be "reasonable and plausibly supported." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017); *see Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025) ("[A] plaintiff must plead facts sufficient to allow a plausible inference that the challenged action was taken because of his race.").

Reed-Morton does not clear that bar. She alleges race discrimination in counts one, two, four, eleven, and twelve, and sex discrimination in counts one, eleven, and twelve. Def.'s Mot. to Dismiss 3–4 (parsing *pro se* complaint into twelve distinct counts). Some of the actions underlying those counts—including plaintiff's nonselection for promotion and fourteen-day suspension—are sufficient employment-related harms. *See Muldrow*, 601 U.S. at 354–55 (holding that a Title VII plaintiff need show only "some harm respecting an identifiable term or condition of employment"); *Douglas v. Donovan*, 559 F.3d 549, 552–53 (D.C. Cir. 2009) (recognizing denial of promotion as an adverse employment action); *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (treating

reduction in responsibilities as an adverse employment action). But the Complaint contains virtually no factual allegations suggesting that plaintiff's race or sex had anything to do with those decisions.

Reed-Morton alleges, for example, that Montgomery scrutinized her work, treated her condescendingly, and assigned some work in her budget areas to others; that Abell failed to intervene when Reed-Morton complained; and that Reed-Morton was later denied a promotion and disciplined. Compl., Claims ¶ 1–2, 4, 9. But she does not allege discriminatory statements by the relevant decisionmakers, identify similarly situated employees outside her protected classes who were treated differently, or otherwise describe circumstances suggesting that race or sex motivated those actions. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 & n.3 (D.C. Cir. 2008) (identifying comparator evidence, procedural irregularities, treatment of minority employees, and discriminatory statements as evidence relevant to discriminatory motive); *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566–67 (D.C. Cir. 2019) (explaining types of evidence relevant to discriminatory nonselection); *cf. Muldrow*, 601 U.S. at 354 ("The words discriminate against, we have explained, refer to differences in treatment that injure employees. Or otherwise said, the statute targets practices that treat[ ] a person worse because of sex or other protected trait.") (internal quotation marks and citations omitted).

Reed-Morton supplies additional allegations concerning discriminatory motive in her opposition. Because she is proceeding pro se, the Court considers her complaint "in light of all filings including filings in response to a motion to dismiss" and "attached exhibits." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (citation modified) (quoting *Brown v. Whole Foods Mkt. Grp.*, 789 F.3d 146, 152 (D.C. Cir. 2015)). But the additional allegations in Reed-Morton's opposition and attached exhibit are not enough to save her complaint.

First, Reed-Morton asserts that Montgomery had a "documented history of mistreating female employees" and that "[m]ale comparators" received favorable treatment. Pl.'s Opp'n to Mot. to Dismiss (Pl.'s Opp'n) 4, Dkt. 15. But she does not identify those employees, describe Montgomery's alleged treatment of them, explain how any male employee was similarly situated to her, or otherwise describe how their treatment differed. Those generalized assertions therefore do not plausibly suggest that any challenged action occurred because of Reed-Morton's sex and are little more than a "threadbare recital" of discriminatory treatment. *Iqbal*, 556 U.S. at 678. To be sure, a Title VII plaintiff need not identify a comparator to survive a motion to dismiss. *Wiley*, 511 F.3d at 156. But she must allege some facts permitting the reasonable inference that the challenged action occurred *because of* a protected characteristic. *See Iqbal*, 556 U.S. at 678; *see also Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017) ("[T]he plaintiff must nevertheless plead sufficient facts to show a plausible entitlement to relief."). Reed-Morton has not done so here.

Second, Reed-Morton alleges that a white female candidate was selected for the Deputy Assistant Secretary of Operations position despite ranking below Reed-Morton during the interview process. Pl.'s Opp'n 4. But the materials Reed-Morton submitted show that the cited ranking resulted from the first-round interview panel, which referred four candidates—including Reed-Morton ranked third and the eventual selectee ranked fourth—for further consideration. *See* Pl.'s Opp'n Ex., Dkt. 15-1, at 43–45. Reed-Morton then participated in a second-round interview with the selecting official and another senior executive. *Id.* at 44–45. She does not allege how she and the selectee compared in that second round, that the first-round ranking controlled the ultimate decision, nor does she allege any race-based statement or other circumstance surrounding the final selection. Reed-Morton's higher ranking than the selectee at the first stage of a multistage selection

process does not, without more, plausibly support an inference that the ultimate nonselection occurred because of race. *See Joyner*, 140 F.4th at 530; *cf. Sieger v. Noem*, No. 25-cv-547 (D.D.C. Apr. 14, 2026) (denying dismissal where the plaintiff alleged not only that the selectee had ranked substantially lower in one round of a multistage interview process, but also that the decisionmaker altered the selection criteria, introduced an unusual second-round interview, excluded higher-ranked candidates from that round, selected an allegedly ineligible candidate, and made a race-based statement bearing on her hiring practices). And because Reed-Morton and the selectee are both women, this allegation also does not support an inference of sex discrimination. *See* Pl.'s Opp'n Ex. at 44.

Third, Reed-Morton points to "SES-level selection disparities" within her organization. Pl.'s Opp'n 4. As with her allegations about a history of mistreating female employees, Reed-Morton's vague statement of selection disparities is not enough to plausibly support an inference of discrimination. *Townsend*, 236 F. Supp. 3d at 298. To the extent this allegation relates to the fact that three of four SES officials selected by Forero during a two-year period were white women, *see* Pl.'s Opp'n Ex. at 46, Reed-Morton provides no information about the relevant applicant pools, the candidates' qualifications, or the circumstances of those selections. Without context, those raw selection figures do not plausibly suggest that race or sex motivated any challenged action here.

Taken together, Reed-Morton's allegations describe a series of unfavorable workplace actions; they do not plausibly connect those actions to her race or sex. *See Joyner*, 140 F.4th at 530. Reed-Morton therefore has not stated a discrimination claim.

**B. Retaliation.**

Title VII "both prohibits employers from engaging in employment practices that discriminate . . . and bars them from retaliating against an employee because she has opposed any such practice." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (internal quotation marks and alterations omitted). To establish retaliation, a plaintiff generally must show that she suffered "(i) a materially adverse action (ii) because [she] had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). An action is materially adverse for purposes of retaliation if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

At the pleading stage, however, a plaintiff "need not plead facts showing each of these elements in order to defeat a motion under Rule 12(b)(6)." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015). That is because a plaintiff may ultimately establish retaliation through direct evidence rather than the *McDonnell Douglas* framework. *Id.* at 162. Still, her filings must contain sufficient factual matter to make retaliation plausible rather than merely possible. *See id.*; *Iqbal*, 556 U.S. at 678. "While no magic words are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (citation modified); *see also id.* (expressing doubt that employee memo constituted protected activity where memo complained of "embarrassing, humiliating, and downright insulting" behavior and "incidentally mention[ed] [the employee's] previous [sexual harassment] lawsuit" but did not explicitly allege discrimination).

Reed-Morton readily clears the protected-activity hurdle. Filing an EEO complaint constitutes protected activity under Title VII's participation clause, *see* 42 U.S.C. § 2000e-3(a),

and she alleges extensive EEO activity dating to 2015. The Complaint also permits the inference that relevant management officials knew of at least some of that activity. *See* Compl. Ex. 1 at 4; *Holcomb*, 433 F.3d at 903 (explaining that a causal inference may arise where the decisionmaker knew of the protected activity and the adverse action followed shortly thereafter). Her retaliation claims nevertheless fail because her filings do not plausibly connect that activity to the particular actions she challenges.

Start with counts one through four. To the extent Reed-Morton attributes the conduct underlying those counts to the EEO proceeding she initiated in August 2022, the chronology defeats her theory. An employer necessarily cannot retaliate against an employee for protected activity of which the employer was not yet aware. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272–73 (2001) (per curiam); *Holcomb*, 433 F.3d at 903. Conduct preceding Reed-Morton's August 2022 EEO counseling therefore cannot have been caused by that protected activity.

Her earlier EEO activity does not bridge the gap. Although she alleges protected activity dating to 2015, she offers no nonconclusory facts tying those older proceedings to the challenged actions years later. Temporal proximity can support an inference of causation, but only when the two events are "very close" in time. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (*quoting Clark County*, 532 U.S. at 273). Indeed, the D.C. Circuit has cautioned that a gap of even two-and-a-half months, standing alone, may be insufficient to support an inference of retaliatory motive. *See Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009). And although Reed-Morton alleges that Forero responded negatively to EEO activity she initiated in March 2022, Forero's statement concerned a separate workplace dispute, did not refer to the DAS-O position or any promotion decision, and preceded the selection decision by at least five months. Pl.'s Opp'n Ex. at 3, 4, 44, Dkt.15-1. Without more, that connection is too attenuated to make retaliation plausible.

Much of the early conduct also falls short of the materially-adverse-action standard applicable to retaliation claims. Reed-Morton alleges that Montgomery spoke to her condescendingly, closely scrutinized her work, assigned some of her work to others, and that Abell failed to intervene when she complained. Compl., Claims ¶ 1–2, 4, 9. Title VII does not create "a general civility code for the American workplace," *Burlington Northern*, 548 U.S. at 68, and the D.C. Circuit has accordingly held that "sporadic verbal altercations or disagreements" generally do not constitute materially adverse actions, *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C.Cir.2008). Reed-Morton does not even allege those beyond bare assertions of "demeaning comments" and "undermining of authority." Pl.'s Opp'n Ex. at 3.

Reed-Morton's nonselection for promotion stands on different footing as an adverse employment action. *See Burlington Northern*, 548 U.S. at 68; *Holcomb*, 433 F.3d at 902. But that claim still fails because her allegations do not plausibly connect her nonselection to protected activity. The March 2022 activity and Forero statement are too attenuated for the reasons just explained. Pl.'s Opp'n Ex. At 3, 46. And to the extent Reed-Morton relies on the EEO counseling she initiated on August 18, her own materials show that Forero had requested approval of Abell's selection on August 15. Pl.'s Opp'n Ex. at 44. That later protected activity therefore could not have caused the selection decision. See Clark County, 532 U.S. at 272–73. In essence, she asks the Court to infer retaliatory motive from a lengthy history of EEO activity and an earlier, unrelated dispute, both of which are too attenuated without more. *See Solis*, 571 F.3d at 1321–22.

Reed-Morton's later counts involve more substantial employment actions, too. Counts six through eleven concern the denial of a requested detail, a negative performance evaluation, a three-month leave restriction, a letter of reprimand, and ultimately a fourteen-day suspension. *See* Compl. ¶¶ 7–10. But a negative performance evaluation is not materially adverse merely because

it is unfavorable; ordinarily, the plaintiff must identify some tangible consequence flowing from it. *See Baloch*, 550 F.3d at 1199; *Solis*, 571 F.3d at 1321. Leave restrictions and reprimands likewise depend on their circumstances and consequences. *See Baloch*, 550 F.3d at 1199. A fourteen-day suspension, by contrast, readily satisfies *Burlington Northern*'s standard. *See Burlington Northern*, 548 U.S. at 70–73 (holding that a thirty-seven-day suspension without pay was materially adverse even though the employee was ultimately reinstated with backpay). In all events, even assuming that each of Reed-Morton's later-challenged actions was materially adverse, she must still plausibly allege that it occurred because of her protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Her filings do not. Reed-Morton repeatedly labels the challenged actions "retaliation," and her opposition points generally to "explicit retaliatory statements," departures from agency policy, shifting explanations, reliance on stale or inaccurate facts, and heightened scrutiny. Pl.'s Opp'n 6. But with the exception of Forero's earlier statement, Reed-Morton does not tie those allegations to any particular challenged action or decisionmaker. *See* Pl.'s Opp'n 3, 6; Pl.'s Opp'n Ex. at 3; *Woodruff*, 482 F.3d at 529; *Holcomb*, 433 F.3d at 903. Her allegations that management officials knew about her prior EEO proceedings support an inference that those officials knew about the protected activity. But knowledge and causation are distinct inquiries: knowledge may be necessary to infer retaliation, but it does not by itself establish that the protected activity caused the later action. *See Clark County*, 532 U.S. at 273. The fact that adverse actions followed a long sequence of protected activity does not, without more, plausibly suggest retaliation. *See Solis*, 571 F.3d at 1322.

Indeed, the Complaint itself identifies intervening workplace events that precipitated several challenged actions. Reed-Morton alleges that the leave restriction was because of her use

of sick leave in November, and that the reprimand and fourteen-day suspension arose after she refused to serve as both the funds-control officer and approving officer for a financial transaction. Compl. ¶ 3. Whether the agency was justified in responding as it did is beside the point. The question under Title VII is whether plaintiff has alleged facts supporting a reasonable inference that the challenged actions occurred *because of her protected activity*. *See Gordon*, 778 F.3d at 161–62. Here, the Complaint identifies the immediate workplace events giving rise to those actions while her remaining allegations do not plausibly connect them to Reed-Morton's EEO activity. *See* Pl.'s Opp'n at 3, 6.

And finally, Reed-Morton's allegations concerning OSC do not save her retaliation claim. Title VII's retaliation provision protects an employee because she "has opposed any practice made an unlawful employment practice by" Title VII or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Thus, an employee's complaint must concern discrimination prohibited by Title VII; complaints about other forms of employer misconduct do not become Title VII protected activity merely because the employee has separately engaged in EEO activity. *See Broderick v. Donaldson*, 437 F.3d 1226, 1232–33 (D.C. Cir. 2006) (holding that complaints that did not allege discrimination based on a protected characteristic did not constitute protected activity). Reed-Morton's report of allegedly improper agency expenditures therefore does not, without more, constitute protected Title VII activity.

Further, the chronology independently forecloses reliance on the OSC allegations. Reed-Morton alleges that OSC contacted her concerning the report in April 2024 and informed the President that one allegation had been substantiated in April 2025, while the claims pleaded in the

Complaint concern conduct ending in February 2024. Later protected activity cannot have caused an employment action that had already occurred. *See Clark County*, 532 U.S. at 272–73.

Construing the Complaint liberally, Reed-Morton has plausibly alleged extensive protected activity, management knowledge of at least some of that activity, and several subsequent unfavorable employment actions. What she has not alleged are facts plausibly connecting the two. *See Gordon*, 778 F.3d at 161–62. Her repeated characterization of those actions as retaliatory cannot substitute for factual allegations permitting a reasonable inference of retaliatory motive. *See Iqbal*, 556 U.S. at 678. Her retaliation claims therefore fail.

**C. Hostile Work Environment.**

Reed-Morton's complaint, broadly construed, could also be read to assert a hostile work environment claim under Title VII. To state a hostile-work-environment claim, a plaintiff must allege that her employer subjected her to "discriminatory intimidation, ridicule, and insult" sufficiently "severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The Court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). (citation modified) (*quoting Harris*, 510 U.S. at 23). The hostility standard is "sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* at 788 (citation modified). Thus, sporadic incidents of rude or unprofessional behavior are insufficient to establish an environment of "severe or pervasive" hostility. *Barbour v. Browner*, 181 F.3d 1342, 1348–49 (D.C. Cir. 1999).

Reed-Morton points collectively to her supervisors' allegedly demeaning treatment, scrutiny of her work, interference with her staff and supervisory authority, disciplinary actions, disputes concerning her financial-control responsibilities, and denial of a requested work detail. She adds in her opposition that this conduct included persistent demeaning comments, interference with her staff, use of disciplinary processes, and resulting medical harm. Pl.'s Opp'n at 6–7. But even assuming those allegations collectively describe sufficiently severe or pervasive mistreatment, which they do not, the Complaint again fails to plausibly connect that treatment to plaintiff's race, sex, or protected EEO activity. *See Baloch*, 550 F.3d at 1201.

*Baloch* is instructive. There, the D.C. Circuit rejected a hostile-work-environment claim based on, among other things, disciplinary actions, unfavorable performance reviews, leave restrictions, and workplace conflicts. 550 F.3d at 1201. The court emphasized that "none of the comments or actions directed at Baloch expressly focused on his race, religion, age, or disability," and that many of the complained-of events reflected ordinary workplace disputes rather than discriminatory harassment. *Id.* Similarly, *Baird* confirms that discrete employment actions may be considered as part of the overall hostile-environment inquiry, but they must collectively satisfy the demanding severe-or-pervasive standard and, for a retaliatory hostile environment, be tied to protected activity. 662 F.3d at 1250–52.

So too here. Reed-Morton alleges a contentious relationship with her supervisors and a series of employment disputes, but she does not allege racial or sex-based comments or other circumstances plausibly suggesting that the alleged hostility occurred because of her race or sex. Nor does she plausibly connect the alleged hostility to her protected activity. Although she points to Forero's statement concerning an earlier EEO dispute, that statement concerned a separate workplace matter and is too attenuated from the broader course of alleged hostility to support an

inference that the workplace became hostile because of her EEO activity. *See* Pl.'s Opp'n Ex. at 3, 44. Title VII does not prohibit workplace hostility untethered to unlawful discrimination or retaliation. *See Baloch*, 550 F.3d at 1201. Because Reed-Morton supplies no factual basis for that necessary causal connection, she fails to state a hostile-work-environment claim.

**CONCLUSION**

For the foregoing reasons, the defendant's Motion to Dismiss, Dkt. 14, is GRANTED. The plaintiff's claims against the defendant are DISMISSED WITHOUT PREJUDICE. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 29, 2026